UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| U.S. FOODSERVICE, INC., and the U.S. FOODSERVICE 401(k) RETIREMENT SAVINGS PLAN, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 10-40103-FDS |
| v. | ) ) | |
| TINA R. DAIGNAULT, DAVID MATOSKY, Administrator of the Estate of Kenneth Daignault, JEFFREY C. DAIGNAULT, ROBERT R. DAIGNUALT, KENNTH J. DAIGNAULT, JR., LYNNE M. CIOCIOLO, and LAURIE J. MATOSKY, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM AND ORDER

**SAYLOR, J.**

This is an action for interpleader. Plaintiffs U.S. Foodservice, Inc., and the U.S. Foodservice 401(k) Retirement Savings Plan have filed this action against various defendants who are claiming benefits under the Plan.

Plaintiffs have moved for an order permitting them to deposit the benefits into the Court, dismissing them from the case, and awarding them reasonable attorney's fees. The immediate dispute concerns the amount, if any, of attorney's fees to be awarded.

**I.     Background**

USF sponsors the U.S. Foodservice 401(k) Retirement Savings Plan. The Plan is a pension benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Kenneth Daignault was a former employee of USF and a participant in the 401(k) Plan. Under the Plan's terms, certain benefits were payable following his death.

On September 10, 2000, Kenneth and Tina Daignault were married. Ms. Daignault filed for divorce in 2003, and on March 17, 2005, a Judgment of Divorce Nisi was entered. Under the terms of their divorce decree, the parties agreed to divide the marital coverture portion of the Kenneth's 401(k) Plan so that Tina would receive 50% of any proceeds that accrued from September 10, 2000, to March 17, 2005. To ensure that Ms. Daignault would receive her 50% share of the Plan's proceeds, the divorce decree stated that the parties would have a Qualified Domestic Relations Order ("QDRO") executed.

Kenneth Daignault died on September 25, 2009. Prior to his death, he designated Jeffrey C. Daignault, Robert R. Daignault, Kenneth J. Daignault, Jr., Lynne M. Ciociolo, and Laurie J. Matosky as the beneficiaries of his Plan benefits. The QDRO contemplated by the divorce decree was not entered prior to his death.

On November 2, 2009, Tina Daignault's counsel notified the Plan of Ms. Daignault's claim to a portion of the death benefits. In March 2010, Tina Daignault commenced a separate action in the Worcester Probate and Family Court against USF, the Estate of Kenneth Daignault, and David Matosky, administrator of the decedent's estate, and sought injunctive relief. On March 8, 2010, the Probate Court enjoined USF and David Matosky from releasing any funds until ordered by the court to do so, but stated that it would revisit the matter. On March 17,

2010, when the Probate Court examined the case again, it dismissed the claim for injunctive relief.

On March 17, 2010, the Probate Court approved the QDRO contemplated by the divorce decree, and assigned Tina Daignault a 50% interest in the vested portion of the Plan from the period September 10, 2000, to March 17, 2005. On March 22, 2010, David Matosky filed an answer and counterclaim in the Probate Court action in which he denied that Tina Daignault was entitled to any of the Plan's assets.

The vested balance of the 401(k) Plan account at the time of Kenneth's marriage to Tina on September 10, 2000, was $59,001.04. When the couple divorced on March 17, 2005, the vested balance was $120,505.45. When the QDRO was approved on March 17, 2010, the vested balance was $178,002.72. On November 5, 2010, the vested balance was $188,949.57.

## II. <u>Analysis</u>

Plaintiffs and defendants agree that death benefits are payable from the Plan; the principal issue is to whom those benefits should be paid. Under the circumstances, it is appropriate to permit plaintiffs to pay the proceeds into the Court and to be dismissed from the action. *See* Fed. R. Civ. P. 22. Plaintiffs also seek an award of $18,347.76 in attorney's fees and costs, to be paid out of the fund.

District courts may, in their discretion, award reasonable attorney's fees in interpleader actions. *Sun Life Assurance Co. of Canada v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009) (the power to grant attorney's fees is "part of the historic equity powers of the court in interpleader actions and [has] long been recognized under both the Federal Rules and the statute."). Such fees are appropriate when "the party initiating the interpleader (1) is disinterested, (2) admits liability, (3) deposits the fund in the court, and (4) has asked to be relieved of any further liability." *Smith*

3

*Barney, Harris Upham & Co., Inc. v. Connolly*, 887 F. Supp. 337, 346 (D. Mass. 1994); *Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (1st Cir. 1962) (an interpleader fee is usually awarded out of the fund to compensate a totally disinterested stakeholder who had been, by reason of the possession of the fund, subjected to conflicting claims through no fault of its own.").

There is no question that plaintiffs have no interest in the funds, that they admit liability, seek to deposit the funds into the Court, and have asked to be relieved of any further liability. The question is whether the amount of the requested attorney's fees is equitable; there is no apparent contractual or statutory basis on which such fees may be recovered. Furthermore, the norm, absent a contract or statute to the contrary, is that all parties to litigation bear their own attorney's fees.

The attorney's fees at issue were charged by two law firms: Alston & Bird, which appears to be national counsel to plaintiffs, and Lyne Woodworth & Evarts LLP, which appears to be local counsel. Attorney Patrick DiCarlo of Alston & Bird has submitted an affidavit stating that he spent 19 hours on the matter, at a total cost of $9,200 (or about $485 per hour). No time entries or other breakdown of the particular tasks involved was provided. Two bills from Lyne Woodworth have also been submitted, with time entries and other details; those bills total $9,149.76. Together, the requested attorney's fees total $18,347.76, or nearly 10 per cent of the value of the fund ($188,949.57 as of November 2010).

The Court has no reason to doubt that the time was expended, or that the billing rates are those customarily charged by attorneys in the relevant geographical areas performing similar tasks. In this context, however, those facts are the beginning of the inquiry, not the end of it. Any equitable result must also take into account the (1) size of the fund, and (2) its importance to

the parties, and (3) the ratio of the requested attorney's fees to the size of the fund.

As noted, the fund at issue totals approximately $189,000. Although relatively small by some measures, is undoubtedly of great significance to the individuals to whom it will be paid out. As a 401(k) plan, it likely represents the result of an adult lifetime of saving by Kenneth Daignault. And the payment of nearly 10% of the fund's assets—not to the attorneys for the disputing parties, who will undoubtedly collect their own share, but the administrator of the fund—appears excessively high.

The problem is compounded by the fact that Alston & Bird provided no detail as to the work it performed, making it impossible to assess the reasonableness of the time expended. The detail provided by Lyne Woodworth & Evarts includes some not-insubstantial time spent coordinating and discussing the matter with Alston & Bird. While it is hardly unreasonable for national and local counsel to consult and coordinate, in this context at least it is unclear why that work should come at the expense of the fund. It is also impossible to determine under the circumstances whether the two firms performed any duplicative work.

There may be instances where extraordinary demands of a case require that a relatively large amount be awarded. Under the circumstances presented here, an award of nearly 10% of the assets is inequitable. Nonetheless, it appears that awarding no amount at all would also be inequitable, as the legal costs were necessarily incurred, and the parties' failure to have a QDRO entered undoubtedly added to those costs. Again, however, the norm is that parties bear their own expenses, and any award must take that fact into account as well. Without better guideposts to determine a fair and equitable award with any greater precision, the Court will award attorney's fees and costs to plaintiffs in the amount of $3,778.99, representing approximately 2% of the

assets of the fund. That amount, taking into account all of the factors outlined above, appears to be the most equitable result under the circumstances.

## III. <u>Conclusion</u>

For the foregoing reasons, the Motion for Interpleader filed by plaintiffs U.S. Foodservice, Inc., and the U.S. Foodservice 401(k) Retirement Savings Plan is GRANTED in part and DENIED in part. Plaintiffs shall deposit the death benefits described in the complaint that are payable from the U.S. Foodservice 401(k) Retirement Savings Plan into the Court, and upon such deposit plaintiffs shall be dismissed from this action. Plaintiffs are awarded $3,778.99 in attorney's fees and costs, payable from the benefits that are to be deposited into the Court.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: February 9, 2011